IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHABAD-LUBAVITCH OF GREATER MILFORD, INC.<br><br>Plaintiff<br><br>v.<br><br>THE TOWN OF HOLLISTON and ANDREW PORTER, individually<br><br>Defendants | DOCKETED<br><br>CIVIL ACTION NO:____<br><br>03-40278 |

MOTION OF THE PLAINTIFF, CHABAD LUBAVITCH OF GREATER MILFORD, INC. FOR A TEMPORARY RESTRAINING ORDER, EX PARTE, PURSUANT TO F.R. CIV. P. 65(b) PENDING A HEARING ON A MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO F.R. C. P. 65(a), AND MOTION OF THE PLAINTIFF, CHABAD LUBAVITCH OF GREATER MILFORD, INC. FOR A PRELIMINARY INJUNCTION PURSUANT TO F.R.C. P. 65(a)

Now comes the Plaintiff, Chabad Lubavitch of Greater Milford, Inc. ("the Plaintiff") and moves this Honorable Court for a temporary restraining order pursuant to F.R.C.P. 65(b), ex parte, and for preliminary injunction following notice pursuant to F.R. C.P. 65(a). The Plaintiff is requesting that this Court issue temporary relief ordering that the Defendants comply with their own by-laws, and to otherwise cease and desist in depriving the Plaintiff of its rights under the First and Fourteenth Amendments of the United States Constitution, and to otherwise cease and desist in singling out the Jewish faith for discrimination in the town of Holliston.

As grounds for this Motion, the Plaintiff states that this is a lawsuit seeking remedies for deprivations of constitutional free speech rights guaranteed to the Plaintiff pursuant to the First and Fourteenth Amendments of the United States Constitution. The Plaintiff is seeking to install a holiday menorah in front of the Town Hall in the Town of Holliston. Denial of this right is not



only constitutionally impermissible, but also contrary to the by-laws of the Town of Holliston. Consequently, the Plaintiff is seeking a temporary restraining order precluding the Defendant, Town of Holliston, from ongoing violations of the Plaintiff's protected rights, and a preliminary injunction precluding further violations pending trial in this matter.

As grounds for this motion, the Plaintiff states as follows:

I.   NATURE AND STATUS OF PROCEEDINGS

The Plaintiff filed this suit on December 12, 2003 seeking a declaration that the Town of Holliston and its politically elected agent, Andrew Porter, did violate the Plaintiff's constitutionally protected free speech rights under the First and Fourteenth Amendments of the United States Constitution, and related statutes. The Plaintiff now seeks a temporary restraining order to preclude further violation pending the outcome of this matter at trial.

II.   FACTS

The Plaintiff is a synagogue in Milford, Worcester County and services the greater Milford area, including the town of Holliston. The Plaintiff's business consists of providing outreach and services to the Jewish community, as well as providing education about Jewish beliefs, traditions and cultural practices to the general population in order to foster understanding of these beliefs, traditions and cultural practices. As part of its business activity, the Plaintiff, places Chanukah menorahs on public spaces within its business operating area. Menorahs are placed in public spaces in towns throughout the area, and menorahs have been placed in Holliston, Ashland, Framingham, Natick, Wayland, Sudbury and elsewhere.

The Plaintiff sought the use of public space in Holliston for this activity, specifically the space in front of the Town Hall in Holliston, which is the most appropriate public space in Holliston for this activity. The Plaintiff has attached to the Complaint a photograph of a prior lighting of a menorah in the same location. The prior activity was carried out without disturbance or harm or disruption of town activities. The Plaintiff has agreed that this activity would be cost-neutral to the municipality.[1]

The by-laws of the Town of Holliston do not preclude this activity. The relevant pages of the by-laws pertaining to public spaces were appended to the Complaint. The by-laws pertaining to public spaces regulate reasonable time, place and manner restrictions which do not apply to the planned activity. In effect, the by-laws preclude disruptive behavior.

At 9:06 pm on Tuesday, December 9, 2003, Defendant, Andrew Porter, a selectman in the town of Holliston, left a voice-mail message for the Plaintiff in which Mr. Porter declared that the Town of Holliston had decided not to allow holiday displays on public spaces during the holiday season. Notwithstanding this statement, which is inconsistent with the town by-law, the town of Holliston has adorned its public spaces with Christmas decorations, including wreaths, gift stocking and a plastic, illuminated Santa Clause affixed to the Holliston Fire Station on Central Street. A fundraiser sale of Christmas trees is advertised throughout the town on town property.

Clearly, the restriction on the holiday display does not apply to all faiths and means of expression. Indeed, on December 12, 2003, the MetroWest Daily News quoted Defendant Andrew Porter as stating that "…the town does not allow holiday decorations with any 'religious

---

[1] At least for the purposes of this lawsuit. This lawsuit does not address the fact that the cost of Christmas decorations in the town of Holliston are carried by the taxpayers

3

connotations'....The one exception is an inflatable Santa Clause at Holliston Fire Station." Attached to this Motion as Exhibit A. Clearly, the irony of this statement escapes town officials.

Chanukah commences on the evening of December 19, 2003, seven days from the date of filing of suit. Notice of the denial of the right to exhibit the menorah was given orally on December 9, 2003. In order to adequately and properly display the menorah with the appropriate solemnity, and hold a festive lighting of the menorah, the Plaintiff must acquire the menorah from New Jersey, assemble it and place it, and give notice to the community of the event, which would likely include other elements of a holiday program. These preparations require planning and some amount of time, which can be done, at minimum, in a week. See, Affidavit of Kievman, attached hereto.

### III.   ARGUMENT

#### A. THE PLAINTIFF IS ENTITLED TO BOTH A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

In order to grant a temporary restraining order and, after notice a preliminary injunction, a Court must find "that plaintiff will suffer irreparable injury if the injunction is not granted; ...that such injury outweighs any harm which granting injunctive relief would inflict on the defendant;...that plaintiff has exhibited a likelihood of success on the merits; and...that the public interest will not be adversely affected by the granting of the injunction." Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d. 1006, 1008-09 (1st. Cir. 1981).

Because the United States Supreme Court has ruled definitively that a menorah is a secular and cultural symbol, that the deprivation of free speech is per se irreparable harm, that the interest of the community is fostered by the kind of cultural diversity symbolized by the menorah

4

and that restrictions cannot be religiously motivated, the Plaintiff is entitled to the restraining order that will permit the Plaintiff to mitigate the harm being suffered at this time.

### B. THE PLAINTIFF CAN DEMONSTRATE CERTAINY OF SUCCESS ON THE MERITS

As a threshold matter, the Plaintiff notes that the Plaintiff does not challenge a bylaw of the town of Holliston, but rather the deprivations suffered by the Plaintiff as a result of a refusal of the town of Holliston and its officials to follow the by-law. As is evident from the statements of town officials in Exhibit A, the policy specified is an oral policy, not part of town law. Consequently, the Plaintiff seeks to bar the Defendants from violating their own bylaw.

The conduct of the Defendants, acting in a manner that precludes free expression based upon the Jewish content of that expression, is absolutely unconstitutional.

As the Court noted in <u>Heffron v. Society for Krishna Consciousness</u>, 452 US 640, 101 S.Ct. 2559, 2564 (1981), "a major criteria for a valid time, place and manner restriction is that the restriction 'may not be based upon either the content or subject matter of speech'." Citations omitted.

The mere fact that the content is religious content does not provide a compelling interest for restricting free speech. See, <u>Widmar v. Vincent</u>, 454 US 263 (1981) and <u>Board of Westside Community Schools v. Mergens</u>, 496 US 226, 110 S.Ct. 2356 (1990). In any event, the point is moot in this case, as the Court has determined that a menorah is not religious expression. As the Court noted in <u>County of Allegheny v. ACLU</u>, 492 US 573, 109 S.Ct 3086, 3115 (1989), the menorah is "a recognition of a cultural diversity" and a "secular recognition of different traditions for celebrating the winter holiday season."

In short, the United States Supreme Court has frequently addressed the issue as to when a municipality may attempt to regulate the free speech rights of religious individuals and, as noted above, has frequently confirmed that a municipality may not regulate on the basis of religious content.

Officials from the town of Holliston justify their conduct in Exhibit A by stating that their intent is to bar decorations with any "religious connotations." As a matter of law in the United States of America, a municipality simply may not do so. Even so, the United States Supreme Court had fully noted that a menorah is a secular, not religious symbol. Thus, even if the town of Holliston had legal right to bar religious expression, which it does not, the menorah does not fit within that policy category. Based upon the holdings of the Supreme Court, a menorah is no more a religious item than the Defendants' plastic inflatable Santa Claus.

And, as also noted in Exhibit A, the policy does not coincide with other statements made by town officials. By permitting a plastic Santa Claus, as well as wreaths, stockings, candy canes and other secular and cultural symbols of Christmas to adorn public buildings and public spaces, the town of Holliston has acted in a non-neutral manner, specifically barring secular and cultural symbols of *Jewish* orientation and connotation. Aside from the legal implications of such a ban, the moral debasement of such conduct is repugnant and shocks the conscience.

This point was specifically raised in County of Allegheny, where the Court noted that "[s]imply put, it would be a form of discrimination against Jews to allow [Pittsburgh] to celebrate Christmas as a cultural tradition while simultaneously disallowing the acknowledgment of Chanukah as a contemporaneous cultural tradition." County of Allegheny v. ACLU, 492 US 573

There is no case law that would allow these Defendants to simply by-pass their own by-law or to permit the Defendants to simply bar the Plaintiff's free speech rights based upon the content of that speech-whether that content is viewed as religious or Jewish. The Court has been clear on this point. The Defendants conduct, contrary to the by-law, is not only not content neutral, but content biased against this Plaintiff and its religious, Jewish faith. Under any circumstances, the conduct is illegal and unlawful, and certain to be permanently enjoined by this Court.

Whereas the Defendants could make no legal showing that would grant them the authority to so violate the law, the preliminary injunction is necessary, the temporary restraining order imperative, and this motion should be ALLOWED.

### C. THE PLAINTIFF HAS DEMONSTRATED IRREPARABLE HARM AS A MATTER OF LAW

As a matter of law, deprivation of First Amendment free speech expression for even a minimal time is sufficient to constitute irreparable harm. <u>Elrod v. Burns</u>, 427 US 347,373(1976).

This case also presents a clear example of 'justice delayed is justice denied.' This case involves the short term placement of a menorah, commencing on December 18, 2003 and running for a mere ten days. The town of Holliston deferred its notification to the Plaintiff until the evening of December 9, 2003. As the attached Affidavit of Rabbi Kivman notes, preparations for this event requires one week of planning. Delaying the onset of planning until a later date will create a situation in which there is simply no time left to remedy the ongoing harm. If this Court does not act immediately to protect the Plaintiff's protected rights, there will be, simply put, no time to repair the harm later.

In the face of clear law on this subject by the Supreme Court as to the rights of the Plaintiff, this Court should not allow the Defendants to defeat those rights by delay and hindrance. Because the conduct is patently unconstitutional as a matter of law, and because the conduct threatens total loss of protected speech rights, the temporary restraining order should be entered now, and the motion for a restraining order, and injunctive relief after hearing, should be ALLOWED.

### D. THE DEFENDANTS CAN DEMONSTRATE NO HARM AS A MATTER OF LAW IF THIS RESTRAINING ORDER, AND PRELIMINARY INJUNCTION, IS ALLOWED

There can be no harm to the Defendants if they are compelled to follow their own by-law. Even so, the Defendants could state no harm that would warrant the extreme positions the have taken. As noted in the Complaint, the town of Holliston hosted a menorah in the same location in 1987 without incident or harm to anyone. Indeed, menorahs of this type are routinely placed throughout the Commonwealth and the United States without harm or injury. There is simply no harm that would be suffered by these Defendants.

When weighed against the <u>Elrod</u> holding that determines that deprivation of free speech is irreparable harm as a matter of law, the Defendants will suffer no harm whatsoever if this motion is allowed. Indeed, the Supreme Court in County of Allegheny v. ACLU specifically held that depriving the general public of cultural diversity causes harm to the public interest. Ironically, the only harm that will be suffered by the Defendant, town of Holliston is the harm it is causing its own citizens by denying them the cultural diversity defined as the public interest by County of Allegheny. For that reason, this motion should be ALLOWED.

### IV.   CONCLUSION

This is not a case of first impression. The United States Supreme Court has spoken loudly and clearly on this issue. Placement of a menorah on public property is not religious expression, but constitutionally protected first amendment free speech rights. The Plaintiff is certain to prevail on this matter at trial. In the meantime, the Plaintiff is being irreparably harmed by the conduct of the Defendants, acting contrary to their own by-law, in pursuing a policy that is not only not content neutral, but content biased. The Court must not let this conduct stand. For those reasons, the Plaintiff respectfully requests an immediate temporary restraining order that would allow the Plaintiff to go forward with its plans to express itself next Friday, while remedy is still possible, and that this court, after hearing, enter an injunction consistent with this Motion.

Respectfully Submitted,
**The Plaintiff**

By its attorney,

/Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: December 12, 2003

# Rabbi threatens suit over menorah

## HOLLISTON

**By Theresa Edo**
NEWS STAFF WRITER

HOLLISTON – Rabbi Mendy Kivman believes a Jewish menorah on the Town Hall lawn would celebrate the holiday season as well as religious freedom, and he is ready to prove it.

Kivman, of the Milford Chabad Center, is expected today to file a restraining order against the town to allow him to erect a menorah, a nine-branch candelabrum used in the Hanukkah celebration, on town property.

Kivman, a resident of Milford, said his role is to educate Jews and non-Jews in the community, and the town should allow the menorah in the spirit of ecumenical unity.

"We want to make sure we get our right to free speech," Kivman said.

Selectmen Chairman Carl Damigella said the board met last night and has not yet decided whether to allow the menorah to be set up on Town Hall's Washington Street lawn.

Board members plan to invite Kivman to their meeting Monday night to discuss the issue, said Damigella. Town Counsel William Mayer will be at the meeting, he said.

Selectman Andrew Porter said.

MENORAH, *Page A9*

Holiday lights are strung on a tree in front of Holliston Town Hall. The town is deciding whether to allow a menorah.

STAFF PHOTO BY KEN MCGAGH

---

"Anything for a said state Sen. who will give Party Executi Dominick Iann

**By Michael Kunzelman**
NEWS STAFF WRITER

BOSTON – State Sen. Cheryl Jacques got more than she bargained for when the Needham Democrat offered her services as a State House tour guide in an online charity auction.

The highest bidder? Dominick Ianno, executive director of the Massachusetts Republican Party.

Ianno, who preserved his anonymity by using "massdemguy," as his eBay user ID, bid $212.50 for the privilege of having Jacques lead him on a tour of the Senate chamber and pose for a post-tour photograph.

The proceeds from the auction, which ended Wednesday, go to the Massachusetts Service Alliance, a private, nonprofit organization that serves as the state commission on community service.

**HIGHEST BIDDER**
▶ GOP leader Domin Ianno paid $212 to have Jacque tour of the Senate. money is for charity

---

rains stopped According to the National Wea than an inch of rain fell on the region yesterday, most of the four-hour period of 11 a.m. to 3 p.m. within the four-hour period of 11 a.m. to 3 p.m. almost 2 feet of snow caused at least three roof collapses with two in Newton and one in Norwood. The industrial buildings had flat roofs.

WET WEATHER, *Page A14*

---

coalition's study The James Repace of physicist James Repace of Repace Associates in Maryland, measured indoor air quality in Boston bars before and after the city went smoke-free.

Repace visited six Boston bars and restaurants in April, a month before the smoke-free policy began May 5, and again

SMOKING BAN, *Page A14*

---

## INSIDE

| | | | |
|---|---|---|---|
| Business | B4-6 | Local News | B1-4 |
| Classified | C11-14 | Movies | C3 |
| Comics | D7 | Opinion | A12-13 |
| Crossword | C8 | State | A3-4 |
| | | Stocks | B5 |
| | | Television | C8 |
| | | World & Nation | A5-8 |
| | | Your Style | C1-4 |

**WEATHER/A13**
Windy, with lots of sunshine, high of 41.

**DAILY NUMBER** 2921

## FROM THE FRONT PAGE

# Rabbi may sue town



STAFF PHOTO BY KEN MCGAGH
A Milford rabbi has threatened to sue the town of Holliston if he is not allowed to place a menorah on the lawn of Town Hall. The town has yet to decide.

**MENORAH**, *From A1*

Tuesday night the town does not allow holiday decorations with any "religious connotation." The one exception is an inflatable Santa Claus at Holliston Fire Station, said Damigella.

Framingham attorney Rob Meltzer, who is representing Rabbi Kivman, said he will file court papers for a temporary restraining order to prevent the town from "acting in a manner inconsistent with its own bylaw."

The town's bylaws do not expressly forbid a religious symbol from being put on town property, Meltzer said.

"We're not looking to overturn the bylaw, but for them to enforce it," said Meltzer.

Earlier this year, Meltzer, a free-lance columnist for the MetroWest Daily News, filed and settled a federal lawsuit against Framingham, claiming his voting rights had been violated when the town forced him to cast a ballot at Wesley Methodist Church building.

Kivman said he contacted Porter more than a month ago about setting up a menorah. Two weeks ago he was told the town would not allow it.

"We're ready to go to court," said Kivman.

When Rabbi Kivman asked Porter last year if he could set up a menorah at Town Hall, he said he was told the building was under construction.

"But that was last year," said Kivman. "Now is an opportune time to ask again."

The U.S. Supreme Court has ruled that the menorah is in the spirit of the holiday season, said Meltzer. Almost every other MetroWest town has a menorah displayed during the holiday season in one place or another, he said.

Earlier this month the Norwood School Committee approved a request from the South Norwood Committee to erect a creche (manger scene) on the Balch School lawn and keep the display up until Jan. 4. The school must display a 36-by-24-inch sign stating who the spon-

school. In response, the School Committee two years ago formulated a display policy that welcomes all groups, religious or otherwise, to erect displays.

Neighboring Ashland is one of several MetroWest towns that erects a menorah in December. Bill Wallace, a board of deacons member at the Federated Church of Ashland said it is "discouraging" Holliston would consider not allowing a menorah.

"I think we've gone way overboard on this," said Wallace. "You strip away the trappings, and we're left with some pretty common ground."

Wallace said when a town or group acts in fear of offending a minority, the majority suffers.

"We've gone too far on the separation of church and state," Wallace said.

*Theresa Edo can be reached at 508-626-3919 or tedo@cnc.com*

# Testimony q

**RAPE CASE**, *From A1*

to commit a crime and possession of a Class E substance (prescription drugs). He will appear in Natick District Court next month for a probable cause hearing to determine if there is sufficient evidence for the case to go to trial.

His attorney, Desmond Fitzgerald, said yesterday the woman's claims are all false.

He focused on the alleged incident at her in-laws' Ashland home, asking the wife the date she was locked in a room for five days.

The woman, who speaks Arabic, said through an interpreter the date was Nov. 19.

But Fitzgerald claimed records from Gold's Gym in Natick showed the woman was in the gym on Nov. 21 at 2:29 p.m. and again on Nov. 23. The judge did not allow the records as evidence because no Gold's Gym employee was in the courtroom to verify them.

Fitzgerald then asked if the affidavit she signed, particularly the part asking if she was telling the truth, had been translated for her.

"I don't know, let my lawyer answer the question," she answered.

After the testimony Donnelly extended straining order for ( but with reservations.

"While I am concer regard to the signifi crepancies between davit filed by the plai the oral testimony wit to the nature of the a leged, specifically witl to the allegations that locked in his parents' (find that there is) s credible testimony," he

The woman's lawy Margosian, said di break outside the co that while his client sa 19 was the date of her onment, she is uncerta exact dates and is relu tell her story because s threatened by her hu family.

She also testified that terpreter for the a! spoke a different dia Arabic.

Meanwhile, Mousa, the advice of his couns fused to discuss any tions made in the affida answered questions reg when they were marri



GREAT HOLIDAY GIFTS
FROM PI GIVENCHY